## Pearson v. Kurtz Brothers.

*Principal and agent—Stock brokers—Stocks carried on margin—Power to pledge customer's stock—Sale of stock without notice.*

1. Where a customer gives his brokers a written authorization to the effect that any stocks or bonds purchased for his account may be loaned or pledged without notice, and thereafter the account is closed and a new account opened with the firm, changed in its *personnel*, without any written authorization as to loaning or pledging stock, there is no presumption that the new account was opened upon the same understanding as to loaning and pledging stock as the former account with the old firm.

2. Unless the customer gives the broker power to sell without notice stock carried upon margin, notice must be given to the customer so as to enable him to redeem his pledge, and if the broker fails in this, notice should be given to the customer before the sale.

3. In such case the broker cannot change his relations with his customer by a notice printed upon a statement which was rendered for the purpose of showing the state of the accounts between the parties.

Motions for judgment *non obstante veredicto* and for new trial. C. P. No. 5, Phila. Co., Sept. T., 1920, No. 7564.

*A. A. Woodruff*, for plaintiff; *A. Beitler*, for defendant.

HENRY, P. J., 52nd judicial district, specially presiding, Feb. 8, 1923.—The defendants were a brokerage firm, dealing in stocks and bonds, and the plaintiff was one of their customers. Certain stocks of the plaintiff, which the defendants were carrying upon margin, were sold without notice, and the plaintiff brought this action for damages for an alleged unlawful conversion. The jury returned a verdict in favor of the plaintiff for $7199.62. The defendants have moved for a new trial and for judgment *non obstante veredicto*. A number of reasons have been filed in support of these motions, but the only ones pressed at the time of the argument were those averring error by the court in the rejection of an agreement or authorization of the plaintiff dated March 17, 1913, the position of the court with reference to the effect of the death of a partner or the withdrawal of a member of the partnership, and the effect to be given to printed notices upon statements of account rendered by the defendants from time to time to the plaintiff.

The plaintiff was dealing with the firm known as Kurtz Brothers as then constituted, and on March 17, 1913, gave them a written authorization to the effect that any stocks or bonds purchased for his account might be loaned or pledged without notice by the said Kurtz Brothers. There was no authority to sell without notice, however. This running account was closed on Feb. 6, 1917, according to the books of the defendants, and on Nov. 18, 1918, a new account opened by the plaintiff with the then firm of Kurtz Brothers. There was evidence to the effect that one of the members of the firm of Kurtz Brothers had withdrawn about four years prior to the time of the trial, that is, in 1918, approximately, and that another member of the firm had died in February, 1920. The authorization of March 17, 1913, was rejected, for the reason that it had nothing to do with the account started in November, 1918, and that any change in the *personnel* of the firm changed the partnership; and the contracts with the old partnership and the customary manner of dealing with the old partnership were not acquired by the new, excepting in so far as they were ratified by the old customers in their dealings with the new firm.

The defendants rely upon the case of McConnell *v.* Hall, 61 Pa. Superior Ct. 583, to sustain their contention that the plaintiff is bound by the authorization given in 1913, and that the withdrawal or death of a member should

not bar the newly constituted firm from taking advantage of this authorization. In this case, however, there was a contractual relation with a firm and a change in the *personnel* of the firm by the death of one of the members, but the party contracting with the old firm accepted the services of the new firm with relation to the subject-matter of the contract with the old firm, and, of course, it was there held that there was an adoption of a contractual relation with the new firm. The case before us is markedly different, for here the contractual relation and all dealings ended in 1917, and there could be no presumption in the subsequent change of the firm that any renewal of dealings was upon the same basis and the same understanding as the relations with the old firm.

There was evidence that in the statements of account rendered by the firm of Kurtz Brothers from time to time to the plaintiff, a printed notice appeared at the head of the account to the effect that it was understood and agreed that all securities carried for the plaintiff's account might be sold without notice. It was contended that this was sufficient authority for the sale in question without notice to the plaintiff. The plaintiff himself testified that at no time was there any agreement that his stock could be sold without notice, although he received the statements in question and knew of the printed clause at the head of the statements. Henry K. Kurtz, one of the defendants, testified that when the last account was opened in 1918, it was done in the regular manner, and nothing was said of any arrangement with reference to selling without notice. This being so, the contractual relation was made subject to the common law rule with respect to stock carried upon margin, and that is, that notice must be given to the pledgor so as to enable him to redeem his pledge, and failing in this, notice should be given prior to a sale. This rule is clearly set forth in Berberich's Estate, 257 Pa. 181. Contractual relations between the parties having been made without any special arrangement as to notice, the defendants could not change this relation by a notice printed upon a statement which was rendered for the purpose of showing the state of the accounts between the parties. It would require something more than mere receipt of such notice to bind the plaintiff to a change in the contractual relation as formed at the time of the inception of the contract. The plaintiff admitted that there was not much margin upon the stock left with the defendants and carried upon margin by them, but he testified that on Aug. 6th, upon request for additional margin, he told a member of the defendants' firm that he was expecting $35,000 insurance, and that, immediately upon its arrival, he would deposit $8000 additional in their hands. The evidence indicated that on or about Aug. 16th this insurance was received, and that a check for $8000 was mailed to the defendants. The defendants contended that the notice given and agreement of the plaintiff was that, while there was some suggestion of insurance money coming, the plaintiff promised that the additional margin should be paid on or before Aug. 10th, and that upon its not being paid, the stock was sold without further notice upon that day after an effort to reach the plaintiff by telephone. Notice of the sale of the stock of the plaintiff was received by him on Aug. 16th, and the sale promptly repudiated by him. The difference between the price at which the stock was sold and the highest price between that day and the time of trial was not disputed, nor the measure of damages submitted to the jury, in the event of the plaintiff being entitled to recover.

We still think the court was correct in its rejection of the authorization of 1913, in the position taken with reference to the change of partnership by withdrawal or death of members, and with respect to the effect of the printed

3 D. & C.

notice upon the statements of account rendered by the defendants to the plaintiff. No other error in the conduct of the trial has been indicated, and we see no reason why the verdict of the jury should be disturbed.

And now, to wit, Feb. 8, 1923, the motion of the defendants .for judgment *non obstante veredicto* is overruled. An exception to this action of the court is hereby noted for the defendants. The motion of the defendants for a new trial is overruled, a new trial is refused, and judgment directed to be entered upon the verdict upon payment of the jury fee.